**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LUKE A. DOUGLAS,**

       **Plaintiff,**

**vs.**                            **Case No. 6:04-cv-1768-Orl-19KRS**

**LOWE'S HOME CENTERS, INC.**

       **Defendant.**

_____

**ORDER**

This case comes before the Court on the following:

1.      Motion for Summary Judgment by Defendant Lowe's Home Centers, Inc., ("Lowe's"), filed on January 17, 2006; (Doc. No. 23);

2.      Notice of Filing Unsigned Affidavits, filed by Defendant on January 17, 2006; (Doc. No. 24);

3.      Depositions of Luke Douglas, Dave Rokowski, and John McGoldrick, filed by Defendant on January 17, 2006; (Doc. Nos. 25-34);

4.      Notice of Filing Signed Affidavits, filed by Defendant on January 23, 2006; (Doc. No. 36);

5.      Response in Opposition to Motion for Summary Judgment, filed by Plaintiff Luke A. Douglas on February 16, 2006; (Doc. No. 37);

6.      Notice of Filing [Affidavit in Support of Response], filed by Plaintiff on February 17, 2006;  (Doc. No. 38);

-1-

7.      Motion to Strike or Disregard the Affidavit of William Brink, filed by Defendant on February 27, 2006; (Doc. No. 39); and

8.      Response to Motion to Strike or Disregard the Affidavit of William Brink, filed by Plaintiff on March 7, 2006.  (Doc. No. 40).

**Background**

Plaintiff Luke A. Douglas, an African-American male, began his employment with Lowe's in April of 1999 as a non-supervisory worker in the lawn and garden section of its Altamonte Springs, Florida store.  (*See* Doc. No. 25, pp. 44-46).  At this time Douglas received a written copy of Lowe's anti-discrimination policies, including how to report workplace discrimination. (*Id*. at pp. 45-48, 53).  After working in non-supervisory positions for a year or a year and a half, Douglas was promoted to Department Manager of the store's electrical department, and in late 2001 was entered into the company's Assistant Store Manager training program by District Manager Bill Edwards.  (*Id*. at pp. 49-50, 69-70).

In December of 2001, John McGoldrick replaced Bill Edwards as District Manager of the district which included Douglas.  (*Id.* at pp. 69-71; Doc. No. 32, p. 41).  McGoldrick's duties included  hiring and firing employees, periodically visiting stores within his district to observe store managers and assistant store managers, check the appearance and operation of these stores, and identify items that needed correction.  (*See, e.g.*, Doc. No. 32, pp. 30-32, 38).  After McGoldrick's tenure as District Manager began, Douglas completed the training program and applied to be an Assistant Store Manager ("ASM") in the Oviedo, Florida store.  In June of 2002, McGoldrick entered a recommendation for Douglas' promotion to ASM,

and he was promoted and transferred to Oviedo.  (*See*, *e.g.*, *id.* at pp. 57-58, 60-61).  At the time of Douglas' promotion to ASM, it is undisputed that he had no negative performance reviews.  In fact, McGoldrick even indicated that at this time, he had "no issues" with Douglas.  (*Id.* at pp. 56-57, 59-60) (also stating that Douglas "had pride" in his department up to that time, and his file had no "red flags").

David Rokowski became Store Manager of the Oviedo store in October of 2002. (Doc. No. 30 , p. 31).  Rokowski's duties included supervising Douglas and the other three ASMs, who were each in charge of different "zones" of the Oviedo Store.[1]  (*See id.* at pp. 37, 47).   Thus, Oviedo ASM Douglas was directly accountable to Oviedo Store Manager Rokowski, who was in turn directly accountable to District Manager McGoldrick.  It is undisputed that Rokowski and McGoldrick are both Caucasian males.

Much of what happened to Douglas during the following nine months is in dispute. The parties do not dispute that McGoldrick conducted a "walkthru," in which he observed the condition of the Oviedo store, about once per month.  The parties also do not dispute that between October 2002 and April 2003, McGoldrick noted deficiencies in Douglas' zone on several different visits.  (Doc. No. 23, pp. 2-3; Doc. No. 37-1, pp. 10-11).   Furthermore, although the parties dispute the extent, severity, implications, and repetitive nature of these deficiencies, it is not in dispute that the only formal warning Douglas received between October and April was in November of 2002 for executing an unauthorized merchandise transfer between two Lowe's stores.  (Doc. No. 23, p.2; Doc. No. 37-1, p. 11).

---

[1]  In October of 2002, Douglas's zone, "Zone 1," included the departments of Appliances, Cabinets, Electrical, Flooring, Garden, Home Decor and Paint, Plumbing, and Storage.  (See Doc. 37-1, p. 6; Doc. No. 25, pp. 73-74).

In addition, the parties disagree with regard to the effect of a corporate change in the organizational structure of all Lowe's stores during the time period in question.  Although the exact date is in dispute, some time between November 2002 and March 2003 Lowe's changed the organizational makeup of the Oviedo store.   While Rokowski previously oversaw several ASMs, each with different duties, the new structure kept Rokowski as Store Manager, instituted a position of "Operations Manager" as the second-highest supervisory position in the Oviedo store, and had both positions overseeing four managers: Sales Manager, Administrative Manager, Zone 1 Manager, and Zone 2 Manager.  (*See, e.g.,* Doc. No. 37-2).  The parties dispute whether a Sales Manager and an Administrative Manager outrank the Zone 1 and Zone 2 managers, but do not dispute that the organizational change moved Douglas from the title of "Assistant Store Manager" to "Zone 1 Manager."[2]

Lowe's claims that beginning in March 2003, the problems in Douglas' zone became more severe.  On March 28, 2003, McGoldrick noted several problems during a "walkthru", prompting a discussion between Douglas and Rokowski about his zone's condition.  (*See* Doc. No. 33, pp. 113-117; Doc. No. 28, pp. 206-210; Doc. No. 30, pp. 76, 104-05).  In April, McGoldrick told Douglas his zone was "unacceptable," wrote to Rokowski that Douglas was "not making it happen in his zone," and instructed Rokowski to walk through Douglas' areas daily.  (Doc. No. 29-2, Ex. 32; Doc. No. 33, pp. 121).  McGoldrick also stated that Douglas needed "immediate improvement."  (*Id.*).  On May 7, 2003, Douglas received an Employee

---

[2]  In terms of specific departments, the parties agree this change put "Furniture and Shelving," and the seasonal department of "Lawn and Garden" under Douglas, but the department of "Home Decor and Paint," which Douglas oversaw as an ASM, was no longer his responsibility as Zone 1 Manager.  (Doc. 23, p. 3; Doc. No. 37-1, p. 7).

Performance Report giving him a poor job performance rating.  (Doc. No. 28, pp. 215-16; Doc. No. 29-2, Ex. 33).  The report states that it is a "final warning," which Douglas argues is against Lowe's usual procedure because it was not preceded by an initial warning or a written warning.  (*See id.*; Doc. 37-1, p. 10).  Rokowski discussed the poor evaluation with Douglas and told him to improve within 30 days.  (Doc. No. 28, pp. 215-16; Doc. No. 29-2, Ex. 33).

In May 2003, Douglas complained to Personnel Training Coordinator Vissy Maharaj that McGoldrick was always "picking on him," though he did not state that he felt this treatment was racially motivated.  (Doc. No. 29-1, pp. 285-86).  Specifically, Douglas told her that he was frustrated and told another employee he felt McGoldrick's behavior was "personal" but did not provide any more detail.  (*Id.* at 285-87).  Douglas asserts that McGoldrick's allegedly harsh treatment toward him was the result of an effort to retaliate against Douglas for making this complaint.  (*See* Doc. No. 2 pp. 4-5).  Lowe's argues that this claim is baseless, especially considering that Maharaj was not an employee designated to receive discrimination complaints.  (*See, e.g.,* Doc. No. 23, p. 18).  It further claims that neither Rokowski nor McGoldrick was aware of this conversation between Maharaj and Douglas.  (*See id.* p. 17, Doc. No. 34-1, p. 183; Doc. No. 31-1, p. 151).

Lowe's claims that Douglas' problems intensified in July.  It states Douglas erred in not coming to work as agreed during the July 4th weekend, but Douglas claims that this was a non-issue because he ensured there was sufficient staff coverage in his department for the days in question.  (*See* Doc. No. 29-2, Ex. 34; Doc. No. 28, pp. 226-27, 230).  During the week following the July 4th weekend, Rokowski and McGoldrick noted that Douglas' zone

was dirty and understocked in some areas and that Douglas had not completed tasks he was assigned before the weekend.  (Doc. No. 28, pp. 237-38, 243-44, Doc. 29-2, Ex. 34). Douglas responded by disputing one of the critiques and by stating that he instructed his staff to complete all tasks, but they had disregarded his orders.  (*See* Doc. No. 28, 237-38, 243; Doc. 29-2, Ex. 35).

As a result of these alleged problems with his zone, Douglas was given another written Employee Performance Report with a poor job performance rating on July 11, 2003. (*See* Doc. No. 29-2, Ex. 37).  Lowe's claims this document constituted a "written warning," but Douglas argues that the report does not state what type of notice, if any, it represents. (*See id.*, Doc. No. 23, p. 6; Doc. No. 37-1, p. 10).  Douglas was given 30 days from July 10 to complete a list of tasks requested by McGoldrick, but Rokowski wrote to Douglas that the list of tasks were capable of being completed by July 18.  (Doc. No. 28, pp. 250, 252, 262; Doc. No. 29-2, Ex. 37; Doc. No. 31-3, Ex. 14).  Douglas argues that Rokowski's statement is evidence of animus toward him because it shifted a written deadline in his performance report.  Douglas and McGoldrick also discussed the possibility of a transfer for Douglas, (*See* Doc. No. 28, pp. 250, 252-53; Doc. No. 34-1, pp. 154-157), although the content of this conversation is in dispute.[3]

---

[3]  Regarding Douglas' request for a transfer, Douglas claims that he requested to be transferred to a wide variety of positions, including a transfer to a non-supervisory position,  but was not given a transfer despite the fact that other similarly situated zone managers received them.  (Doc. No. 28, pp. 250-257; Doc. No. 37-1, pp. 8, 10).  Lowe's claims that Douglas did not perform well enough to be transferred as a zone manager, attached onerous conditions to his request to be transferred to a lower position, and that the other employees which received transfers were not similarly situated vis a vis Douglas.  (*See* Doc. No. 23, pp. 7-8, 12-13).

On July 21, 2003, McGoldrick emailed Douglas stating that he would consider transferring him, but before any transfer would be considered, Douglas needed to improve his zone at his current position. (*See* Doc. No. 29-5, Ex. 40; Doc. No. 34-1, p. 165). On or about July 25, McGoldrick visited the Oviedo store and found that some or all of the items on Douglas's list had not been completed. (*See, e.g.*, Doc. No. 28, p. 253; Doc. No. 29-1, Ex. 40). Douglas stated that he could not find the list, which McGoldrick took to mean Douglas had lost the list. (Doc. No. 29-1, pp. 278-79; Doc. No. 34-1, pp. 162-63). On July 29, 2003, Lowe's terminated Douglas for the stated reason of poor job performance. (*See, e.g.*, Doc. No. 29-1, 280, 300). Douglas claims that the failure of Lowe's to give him the full 30 days (i.e., until August 10, 2003) to improve his zone is strong evidence that his firing was racially motivated. (*See* Doc. No. 37, p.13). Lowe's claims that Rokowski told Douglas to contact him if he could not complete the items by July 18, and the fact that Douglas did not do so, did not complete the list, and lost the list, provides ample evidence of Douglas's "poor performance and blatant disregard of McGoldrick's direct orders." (Doc. No. 23, pp. 6-7). Douglas disagrees and states that he did contact Rokowski and ask for assistance. (*See* Doc. No. 29-1, p. 328).

Douglas instituted the instant federal action against Lowe's on December 3, 2004. In his Amended Complaint, Douglas avers that his termination was an intentional retaliation for the complaints he lodged with Vissy Maharaj. (*See* Doc. No. 2, Count I). Douglas also asserts that Lowe's is liable to him for race discrimination for failing to transfer him. Specifically, Douglas claims that similarly situated white managers with similar performance histories were transferred or promoted while his request for a transfer was denied and he was

terminated because of his race.  (*See id.* at Count II).  Finally, Douglas asserts that Lowe's continually subjected him to a hostile work environment either because of his race or in retaliation for his complaint to Maharaj.  (*See id.* at Count III).  Lowe's seeks summary judgment on all counts of the Complaint.

### Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.*  The moving party bears the burden of proving that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.  The court may not weigh conflicting evidence or weigh the credibility of the parties.  *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted).  If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment.  *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson*, 477 U.S. 242). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). All justifiable inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court. *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact remaining for trial. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks omitted).

## Analysis

### A.  Affidavit of William Brink

Lowe's seeks to have the affidavit of William Brink (Doc. No. 38-2) stricken and/or disregarded, alleging that the affidavit contains hearsay and is based on speculation, conjecture, and gratuitous opinion.  (*See* Doc. No. 39, pp. 4-5).  This argument is not well taken.

Federal Rule of Civil Procedure 56(e) only requires that an affidavit be based on personal knowledge, set forth admissible facts, and show that the affiant is competent to testify to the matters stated therein.  *See* Fed. R. Civ. P. 56(e).  Although brief, the five-paragraph affidavit of Brink meets these requirements.  Paragraphs 1 and 2 of the affidavit provide a sufficient showing that Brink is competent to testify.  The time period in question in the instant action is June of 2002 until July of 2003.  (*See supra* the "Background" section of the Court's opinion).  Brink states that he has personal knowledge of the facts therein, and that he, like Douglas, worked for Lowe's as a zone manager from November 2002 until November 2004.  (*See* Doc. No. 38-2 p. 1).  Thus, the affidavit demonstrates that Brink is capable of testifying about Douglas' relationship with the Defendant because he also worked for the Defendant during the applicable time period.  Furthermore, contrary to Lowe's allegations, there is no indication whatsoever that Brink's testimony is based solely on a conversation with Douglas and not based on his personal knowledge.

Nor does Brink's affidavit contain any inadmissible hearsay.  Hearsay is defined as "a statement, other than one made by the declarant while testifying...offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  The only statements in the

affidavit in question are those made by the declarant himself, William Brink.  Thus, all of Brink's statements are excluded from the definition of hearsay in Rule 801.  *See id.*  Any contention that Brink's statements are unreliable, incorrect, or conflict with contrary evidence go to his credibility as a witness and thus should be presented to the fact-finder at trial.  For these reasons, the Motion to Strike the Affidavit of William Brink (Doc. No. 39) is denied.

### B.  Disparate Treatment/Failure to Transfer

After examining the pleadings, depositions, affidavits, and exhibits at issue in the instant case, the Court concludes that Lowe's has not met its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law with regard to Douglas's disparate treatment claim.  A plaintiff with no direct evidence of discrimination establishes a *prima facie* case of race discrimination in violation of Title VII by showing that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job at issue; and (4) his employer treated similarly situated employees outside his class more favorably.  *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  *Id.* at 1562.  Once a *prima facie* case is shown, the defendant must set forth sufficient, admissible evidence demonstrating a non-discriminatory reason for the adverse employment action.  If the defendant does so, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity, where the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the

-11-

adverse action.  *See, e.g.*, *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000).  The plaintiff succeeds either directly by persuading the court that a discriminatory reason more than likely motivated the employment action or indirectly by showing that the employer's proffered explanation is unworthy of credence.  *Id.*  (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255-56, (1981)).  The inquiry for discrimination under the Florida Civil Rights Act mirrors that of claims brought under these federal anti-discrimination laws.  *See, e.g., MacLean v. City of St. Petersburg*, 194 F.Supp.2d 1290, 1301 (M.D. Fla. 2002).

### 1. *Prima Facie* Case

Lowe's does not dispute that Douglas, an African-American, is a member of a protected class; nor does it dispute that his termination was an adverse employment action. Lowe's argues, however, that no reasonable jury could find that Douglas was qualified for his job or that Douglas and his alleged co-workers were similarly situated.  (*See* Doc. No. 23, p.9).  The Court finds that Douglas has produced sufficient evidence such that a reasonable jury could conclude he has established a *prima facie* case of race discrimination. *See Stanfield v. Answering Serv., Inc.*, 867 F.2d 1290, 1293-94 (11th Cir. 1989).

First, Defendant's argument that Douglas was not qualified for his position is without merit.  The parties do not dispute that Douglas possessed the objective qualifications for the job – he completed the training program, applied for the job, and his promotion was approved by Lowe's.  For the first nine or ten months of his job, he received only one formal warning for poor performance.  Douglas states that he performed his tasks adequately for the entire thirteen months he was a zone manager, and Lowe's does not dispute that Douglas did

not lose any of these objective characteristics during his tenure as zone manager.  Generally, a plaintiff proves he is qualified for his position by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action.  *See, e.g., Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988).  By this it is meant that the plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired.  *Id.* at n.3.  The record indicates no such occurrence.

Secondly, Douglas has produced sufficient evidence such that a reasonable jury could conclude Lowe's treated similarly situated managers outside of his class more favorably.  Douglas argues that three other managers, William Brink, Raymond Deveau, and Kevin Taylor, were similarly situated to him and were allowed a demotion or a transfer despite also having poor performance evaluations.  In the most contested section of their briefs, both parties heatedly dispute whether Brink, Deveau, and Taylor were actually similarly situated to Douglas.  Further complicating the situation are Lowe's corporate changes in late 2002 or early 2003, which altered the job titles and descriptions of these managers.  After careful consideration, the Court finds that construing all inferences drawn from the underlying facts in the light most favorable to Douglas and resolving all reasonable doubts against the moving party, Douglas has met his evidentiary proffer.

Taylor and Deveau appear to be valid comparators.  There is no dispute that Taylor and Deveau are Caucasian.  In 2002, Douglas, Taylor, and Deveau were all "Assistant Store Managers."  After the corporate change, Douglas's official title became "Zone 1 Manager," Taylor became "Sales Manager," and Deveau became "Administrative Manager."  The job

-13-

description of all three changed after their respective job titles changed (Doc. No. 30, pp. 47-48), but all also had many similarities.  All three were required at times to be manager-on-duty, all had the alarm code, all were in charge of some aspects of customer service, inventory replenishment, the store's safe, and all could let the armored car drivers into the store before and after their titles changed.  (*See* Doc. No. 29-1, pp. 311-313;  Doc. No. 37-24, p. 36; Doc. No. 32, pp. 49-50; Doc. No. 30, pp. 33, 48).  The parties disagree as to whether Taylor and Deveau outranked Douglas.  Taylor stated that he and the Administrative Manager "technically" outranked Douglas under the "management tree," but Lowe's 2003 Store Organizational Structure flowchart listed all three positions at the same level of authority, all directly under the store's Operations Manager.  (*See* Doc. No. 37-24,  p. 39; *but see* Doc. 37-2).  Taylor also contradicted his earlier statement by saying he considered Douglas an equal and that if Douglas ever reported to him about anything, it was out or respect or to get his advice.  (*See* Doc. No. 37-24, p. 39).  When shown the flowchart, he stated that he disagreed with the flowchart but did not elaborate how or to what extent.  (*See id*. at  45).

Next, the Court does not agree with Lowe's that William Brink was not similarly situated to Douglas.  There is no dispute that Brink is Caucasian.  Brink, like Douglas, was a zone manager who was disciplined for issues with his zone's cleanliness and inventory replenishment. (Doc. No. 34-1, pp. 169-171).  Brink was allowed to transfer in 2003.  (*Id*. at 171).  Lowe's admits Brink had these problems but primarily seeks to distinguish Brink by showing  that Brink was "in training" when all of his problems occurred.  The evidence in the record conflicts as to this point, however.  It is undisputed that Brink transferred in

March of 2003.  (*See, e.g., id.* at 171).  Lowe's claims that Brink was in training until April of 2003.  However, McGoldrick stated in his sworn deposition that Brink started on November 12, 2002, (five months after Douglas), and that the training program only lasted about three months.  (*See id.* at 168-69).  Lowe's cites Rokowski's affidavit at paragraph nine of further confirmation of Brink's training period, but Rokowski's sworn affidavit does not contain a paragraph nine.  (Doc. No. 36-2, pp. 1-2) (skipping from paragraph 7 to paragraph 13).  Thus, due to the fact that Douglas and Brink started only five months apart, had similar job duties, had similar problems, received different treatment, and evidence to the contrary conflicts, the Court finds that Brink is a valid comparator.

Nor can the three be distinguished simply due to how Lowe's views their transgressions.  Douglas notes that each of the three men received two poor evaluations on their respective employee performance reports, (*See* Doc. No. 37-3; Doc. No. 37-4), yet Deveau was later transferred and Taylor was allowed to move to a zone manager position at another store.  (*See* Doc. No. 37-1, p.8; Doc. No. 23, pp. 12-13) (agreeing to this point).  Lowe's argues that Douglas' situation was different because, unlike Deveau and Taylor, he showed no effort to improve on his performance issues and thus "ignored a direct order" from McGoldrick.  (*See, e.g., id.*; Doc. No. 36-2, pp. 16-17).  However, as discussed *infra*, Douglas has produced evidence in the form of his sworn deposition and the affidavit of William Brink which states that Douglas was attempting to address his performance issues when he was terminated.  (*See, e.g.*, Doc. No. 29-1 p. 328; Doc. No. 38-2).  Thus, Douglas has presented enough evidence to move forward.  While comparators must be similar, exactness is not required, and different job titles are not dispositive as to whether employees

-15-

are similarly situated.  *See Lathem v. Dept. of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999).   Exact correlation is not likely or necessary for employees to be deemed similarly situated; the cases simply must be fair congeners.  *See, e.g., Ashley v. Southern Tool, Inc.*, 201 F.Supp.2d 1158 (N.D. Ala. 2002) (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989).

## 2.  Non-Discriminatory Reason(s)

Lowe's has adequately articulated a nondiscriminatory reason for its actions.  Under this prong, Lowe's burden is "exceedingly light."  *See, e.g., Holifield*, 115 F.3d at 1564.  The proper inquiry is not whether the stated reason for termination is correct, but merely whether the defendant produces sufficient evidence such reasonably believed that the employee committed the infraction that led to his termination.  *See, e.g., EEOC v. Total Sys. Serv., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).  In the instant case, Lowe's has produced evidence which indicated that it terminated Douglas for poor job performance, lack of adherence to corporate standards for his zone, and for failing to correct specific deficiencies McGoldrick ordered him to remedy on the July 11 worklist.  (*See, e.g.*, Doc. No. 36-2 pp. 16-19).  Such is all that is required.

## 3.  Pretext

Douglas is now required to demonstrate that the proffered reason articulated by Lowe's was not the true reason for the adverse action.  *See, e.g., Rice-Lamar*, 232 F.3d at 843.  Douglas may succeed either directly by persuading the court that a discriminatory reason more than likely motivated the employment action or indirectly by showing that the employer's proffered explanation is unworthy of credence.  *Id*.

-16-

The parties' accounts of the state of Douglas's zone at the time of his termination are deeply divergent. Lowe's argues that Douglas' zone continually failed to meet corporate standards. Defendant further claims that Douglas disobeyed a direct order from McGoldrick to correct a specific list of items, even stating that he lost the list, failed to follow up with his staff, and made virtually no effort to improve his area at all after receiving the July 11 list from McGoldrick. Testimony from McGoldrick and Rokowski support these claims. (*See, e.g,* Doc. No. 34-1, pp. 151-52, 162-166; Doc. No. 36-2, p. 4; *see also* Doc. No. 31-1, pp. 112-114).

Despite this, Douglas has produced evidence which conflicts with Lowe's position and from which a reasonable jury could conclude Lowe's explanation was unworthy of credence. First, Lowe's initially gave Douglas 30 days from July 10 to complete the list of items on the July 11 list, yet a later an e-mail from Rokowski to Douglas stated that Rokowski felt the list could be completed in 7 days and to contact Rokowski if he had any problems. (*See* Doc. No. 31-3, Ex. 14). Douglas stated he was unsure if the e-mail rescinded the 30-day deadline and felt that he did not have enough time to complete the list by that time. (*See* Doc. No. 29-1, p. 328). Contrary to Lowe's argument that Douglas did nothing to improve and did not contact Rokowski, Douglas testified that he did take Rokowski up on his offer for help, but the only assistance Rokowski provided was to allow Douglas to borrow a couple of cashiers to do some dusting and cleaning. (*See id.* p. 266). Lowe's terminated Douglas on July 29, before the initial 30-day period had expired. (*See, e.g.*, Doc. No. 29-1, pp. 331-32). In contrast, training review documents show that Raymond

Deveau's staff was given training, and he was given two weeks to improve an "F" score on a May 7, 2003 performance review.  (*See* Doc. No. 36-2, pp. 17-19).

In addition, both Douglas and Brink claim that contrary to Lowe's assertion, Douglas was working to improve his zone at the time he was terminated.  (Doc. No. 29-1, p. 266, 328; Doc. No. 38-2, ¶ 5).  Other Lowe's employees agree.  Alliton Ricks, an employee working in Douglas's zone in 2003, stated that he observed Douglas "working all over the store," and indicated that Douglas was constantly busy.  (Doc. No. 37-19, pp. 21-22).  Kevin Taylor, sales manager of the Oviedo store during the time in question, testified that Douglas' firing was "a shock" to him and indicated that he believed Douglas had a good work ethic.  (Doc. No. 37-24, pp. 15, 21).  Furthermore, Taylor added that Lowe's contention that Douglas was not addressing the issues in his zone was "hard to believe."  (*Id*. at p. 15).  Finally, Douglas has produced evidence that his first poor performance report regarding the condition of his zone was labeled as a "final notice," by Lowe's, while Taylor's first two poor performance reports only constituted the less severe  form of a "written notice."  (*See* Doc. No. 37-4).

Evidence of deviation from company policy, particularly uneven application of the rules, is probative circumstantial evidence of discrimination.  *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998); *Berg v. Fla. Dept. of Labor and Employment Sec.*, 163 F.3d 1251, 1255 (11th Cir. 1998).  Thus, because issues of fact remain, the Court cannot grant summary judgment on Douglas' disparate treatment claim.

## C.  Retaliation

Lowe's is entitled to summary judgment on Douglas's Retaliation claim.  A plaintiff establishes a prima facie case of retaliation by demonstrating that:  (1) he engaged in a

statutorily protected expression; (2) an adverse employment action was taken against him; and (3) a causal link exists between the protected expression and the adverse action. *Hairston*, 9 F.3d at 919.  Once the plaintiff has established a prima facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."  *Id*.  If the defendant proffers legitimate reasons, the presumption of retaliation is rebutted and drops from the case.  At the summary judgment stage, the burden then shifts back to the plaintiff to raise a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action.  *See id.* ("The burden to avoid summary judgment is not to show by a preponderance of the evidence that the stated reasons were pretext.  Rather, plaintiff's burden ... is met by introducing evidence that ... could allow a jury to find ... that the plaintiff has established pretext, and that the action was taken in retaliation for engaging in the protected activity.").

In this case, Lowe's does not dispute the second element of a prima facie case for retaliation, that is, that Douglas's termination amounts to an "adverse employment action." (*See* Doc. No. 23, pp. 18-19).  Lowe's instead argues that Douglas cannot establish statutorily protected expression or a causal link between the protected expression and the adverse action.  The Court agrees with Defendant that no genuine issue of material fact exists with regard to either of these elements, and thus that Lowe's is entitled to summary judgment as a matter of law.

First, no reasonable jury could find that Douglas engaged in statutorily protected expression.  In the context of a retaliation claim, expression is not protected if the employee

does not clearly allege discrimination based on a protected class, such as race.  In fact, even allegations of unfair treatment, absent a complaint based on race, sex, or national origin, do not amount to statutorily protected activity.  *See Coutu v. Martin Co. Bd. of Co. Comm.*, 47 F.3d 1068, 1074 (11th Cir. 1995).  "At a minimum, an employee must communicate to [the] employer [his] belief that discrimination was occurring.  It is not enough to simply complain in a racially neutral way about an employer's practices [...]."  *Wehunt v. R.W. Page Corp.*, 352 F.Supp.2d 1342, 1358 (M.D. Ga. 2004).

In the instant case, Douglas admitted in his sworn deposition that he complained only that McGoldrick was "picking on" him.  (Doc. No. 29-1, pp. 285-86).  Despite being advised of workplace discrimination procedures in his employment packet, he admits he never stated to Maharaj, Rokowski, McGoldrick, or anyone in human resources that he was being singled out because of his race.  (*See id.*).  In fact, Douglas indicated that McGoldrick was generally hard on everyone.  Based on this evidence, the Court concludes that Lowe's has met its burden of demonstrating that no genuine issue of material fact exists with regard to whether Douglas engaged in statutorily protected expression.

Even if Douglas did engage in protected expression, his retaliation claim fails because he cannot prove causation.  To establish causation, a plaintiff must generally at a minimum establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).  Rokowski and McGoldrick have both given uncontested, sworn testimony that they were not aware of Douglas' comments to Maharaj. (*See* Doc. No. 23,. p. 17, Doc. No. 34-1, p. 183; Doc. No. 31-1, p. 151).  Furthermore, as

Lowe's points out, Douglas has offered no evidence that anyone was aware of his conversation with Maharaj. (*See generally* Doc. No. 37).  In fact, Douglas specifically stated that he complained to Maharaj instead of the person designated by Lowe's to handle such complaints because he did not want management to discover his dissatisfaction.  (Doc. No. 29-1, p. 297).  An assertion of causation based on a "hunch" unsupported with significant probative evidence cannot work to avoid summary judgment on a retaliation claim.  *Raney*, 120 F.3d at 1198.

The Court finds that Lowe's has met its burden of proving an absence of a genuine issue of material fact with regards to the retaliation claim.  Further, Douglas has failed to come forward with specific facts showing that there is a genuine issue for trial on this Count of the Complaint.  *Fitzpatrick*, 2 F.3d at 1115-17.  Douglas' Response in Opposition does not even address his retaliation claim, and there is no evidence in the record which refutes Lowe's contention that summary judgment is warranted on this issue.   For these reasons, the Court will grant summary judgment on Douglas' retaliation claim.

### D.  Hostile Work Environment

Summary Judgment is also warranted on Count III of the Complaint, which alleges that Lowe's subjected Douglas to a hostile work environment.  To recover on a hostile work environment claim, an employee must establish:  (1) that he belongs to a protected group; (2) that he has been subject to unwelcome  harassment; (3) that the harassment was based on the race of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory and abusive working environment; and (5) a basis for holding the employer liable.  *Gupta v. Florida Bd.*

*of Regents*, 212 F.3d 571, 582 (11th Cir. 2000). Requiring plaintiffs to demonstrate that the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment" is the element that tests most sexual harassment claims. Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Whether or not an environment is hostile can only be determined by looking at the totality of the circumstances; these may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening, humiliating or merely amounts to offensive utterances, whether it unreasonably interferes with an employee's work performance, and its effect on the employee's psychological well-being. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

In the case at bar, Douglas claims that Lowe's subjected him to a hostile work environment by systematically reducing his staff to prevent him from meeting standards and giving him unfairly poor performance reviews, making him feel "uncomfortable, overwhelmed, embarrassed, and humiliated." (Doc. No. 2 at pp. 9-11). Federal courts have rejected hostile work environment claims based on far more egregious conduct than that alleged by Douglas. *See, e.g., Mayfield v. Patterson Pump Co.*, 101 F.3d 1371 (11th Cir. 1996); *Causey v. Balog*, 162 F.3d 795 (4th Cir. 1998). For instance, in *Mayfield,* the plaintiff claimed that his supervisor used racial slurs in his presence, another employee used a racial slur to describe him, and racial epithets describing him were broadcast on a bathroom wall at his workplace. *Id.* at 1374. The Eleventh Circuit affirmed the district court's grant of summary judgment. *Id*. at 1377. In *Causey*, the plaintiff alleged that his supervisor failed

-22-

to transfer or consider him for a promotion and continually interfered with his ability to complete projects, limited his access to supervisors, withheld information, refused to allow him to attend job-related seminars on job time, imposed unreasonable deadlines, reassigned tasks to subordinates, ignored his advice, and chastised him. *Causey*, 162 F.3d at 799-800. The United States Court of Appeals for the Fourth Circuit held that the district court judge was warranted in granting summary judgment, holding that these facts failed to support a claim for hostile work environment. *See id.* at 801-02.

The allegations in the instant case are far less severe or pervasive than the examples discussed above. Even if Douglas subjectively perceived his lack of staff or below-average performance reviews as severe, it would not be objectively reasonable to construe them as severe. See *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (repeated insults, such as being exposed to racial slurs multiple times a day, is what is usually indicative enough to meet Supreme Court's instruction that Title VII is only implicated in the case of a workplace that is "permeated with discriminatory intimidation, ridicule and insult") (citing *Harris*, 510 U.S. at 21). Furthermore, as discussed above, Douglas has offered no evidence of a causal connection between any adverse treatment and his membership in a protected class. (*See supra* Section B). In fact, Douglas' Response in Opposition does not even address his hostile work environment claim, and there is no evidence in the record which refutes Lowe's contention that summary judgment is warranted on this issue. For these reasons, the Court will also grant summary judgment on Douglas' hostile work environment claim.

## Conclusion

-23-

Based on the foregoing:

1.      The Motion to Strike or Disregard the Affidavit of William Brink, filed by

Defendant Lowe's Home Centers, Inc. (Doc. No. 39) is **DENIED**.

2.      The Motion for Summary Judgment filed by Defendant is **GRANTED in**

**part** and **DENIED in part**, in the following respects:

      a.      Summary Judgment is **GRANTED** as to Counts I and III of the

Amended Complaint (Doc. No. 2);

      b.      Summary Judgment is **DENIED** as to Count II of the Amended

Complaint.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _16th__ day of March,

2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-24-